PETITION OF MICHAEL DOYLE for a Writ of *Habeas Corpus*.

Under Pub. Stat. R. I., cap. 74, as amended by Pub. Laws R. I., cap. 819, of July 23, 1889, a justice of this court, on the finding of a commission, made an order for the confinement of a lunatic in a hospital for the insane.

On application for *habeas corpus* made by the guardian of the lunatic,

*Held*, that the detention under the order was legal as against the guardian's right to the care and custody of his ward.

*Held*, further, that the general authority of the guardian was limited by the order made under the statute.

*May* 10, 1890. STINESS, J. Under a commission appointed by one of the justices of this court, according to the provisions of Pub. Stat. R. I. cap. 74, as amended by Pub. Laws R. I. cap. 819, of July 23, 1889, Michael Gannon, of Providence, was declared insane; and an order was issued directing that he be confined in the Butler Hospital, the State Asylum, or some other curative hospital for the insane. Previous to the examination he had been placed in the Butler Hospital by his wife, who had there provided for the expense of his board and care, and he has since remained there. The return in this case shows that he is now detained there under the order of this court. The petitioner claims that such detention

is illegal, because he is the guardian of the person and estate of said Gannon, and therefore entitled to the care and custody of his ward by virtue of his office. He contends that the statute makes it his duty to take suitable charge of the person of his ward, and to provide for his support; and that he cannot do if he is kept out of his control, as in this case. Hence he claims that the statute relating to the restraint of the insane cannot apply to persons under guardianship, and that the return therefore shows no legal detention. There can be no doubt that the general duty and authority of the guardian, with respect to his ward, is such as it is claimed to be by the petitioner; but the question here presented is whether his authority, in a case like this, is superior to the order of this court; or, in other words, whether his authority as guardian is not modified by the statute relating to the restraint of the insane.

It is to be observed that the statute is general in its terms, relating to " any person " found to be insane by a commission, whose confinement shall be ordered by a justice of this court, after an examination and approval of the report. It thus includes persons under legal as well as natural guardianship, and also those who are not under guardianship. The petition must set forth, under oath, that the welfare of the person said to be insane, or of others, requires him to be placed in a hospital for the insane, or to be restrained; and we must assume that the issuing of an order to this end, after due examination, constitutes a finding that such restraint is necessary. The presumption is, that the order will only be made in a proper case, and in circumstances which assure the suitable care of the person by provision for his support from his estate, by his friends or under the statute for the indigent insane. Yet, if the petitioner's claim be correct, a guardian can immediately nullify the order by demanding the custody of his ward. The question at once suggests itself, why should a guardian have a greater right and power than a husband, a father, or a person not under guardianship, with reference to his own liberty? Certainly there can be no higher obligation on the guardian to care for his ward than on a husband to care for his wife, or on a father to care for his children; and if the right to personal control exists in the first case, for a stronger reason it should exist in the other cases. To this it may be said, it should and does exist, because the guar-

dian, legal or natural, may be able to take suitable care of the person outside of a hospital; that it is to be presumed that suitable care will be given to the person by those whose duty it is to care for him; and that the expense of detention in a hospital should not be imposed against one's will. Such an argument is plausible; but it should be borne in mind that these are considerations which the justice must take into account before making the order. If the person can and will be suitably cared for, it is not probable that he would be placed in a hospital; for, in such case, the justice would not find his welfare, or that of others, to require it. If it is requisite, the warrant of the statute is the exercise of the police power, to which personal rights, and especially purely statutory rights, must yield. And it is said that a stranger may institute proceedings, and, by paying the board of the person confined, keep him away from the guardian indefinitely; because under Pub. Stat. cap. 74, § 13, only those who place another in a hospital, or who, without obligation imposed by law, have become responsible for expenses, have the power to remove him therefrom. Circumstances might arise, under which one could be suitably cared for outside of a hospital, which did not exist when the order was made; or a guardian might wish to change his ward to another hospital; or the patient might so far recover that restraint would no longer be necessary for his welfare or that of others. For such cases we think it would be better if the statute made more full and explicit provision. As it is, however, a person so committed may be discharged, before he is fully recovered, upon the recommendation of the trustees and superintendent of the hospital, by an order of a justice of this court. The statute seems to assume that the officers of the hospital, accustomed to care for the insane, will take steps for their release as soon as it is prudent to do so. Whether the justice or court has power to alter or modify the order, after it has been made, to meet such cases, we need not now decide, since the application here made is not for the purpose of change to some other restraint, but upon the ground of an absolute right of custody. Whatever the omissions of the statute may be in these respects, they do not affect the question before us. As to this question, we think the general authority of the guardian is so far limited by an order under the statute that he has not the right to

the custody of his ward, notwithstanding the order; and consequently there is in this case no illegal detention.

*Petition dismissed.*

*Charles A. Wilson & Thomas A. Jenckes,* for petitioner.